695 P.2d 342

**Fred TARBOX and Mary Tarbox, husband and wife, Plaintiffs-Appellants,**

v.

**TAX COMMISSION OF the STATE OF IDAHO, Defendant-Respondent.**

No. 14883.

Supreme Court of Idaho.

Nov. 15, 1984.

Rehearing Denied Feb. 20, 1985.

958

Danny J. Radakovich, Lewiston, for plaintiffs-appellants.

Jim Jones, Atty. Gen., and Stephen J. Lord, Deputy Atty. Gen., State Tax Com'n, Boise, for defendant-respondent.

## ON DENIAL OF PETITION FOR REHEARING

HUNTLEY, Justice.

In June of 1979 Fred and Mary Tarbox, doing business as M & K Sales, a used car proprietorship, were issued a Notice of Deficiency Determination by the Idaho Tax Commission. Most of the tax asserted in the deficiency notice is sales tax on the sales of licensed motor vehicles; however the assessment also includes a fifty percent fraud penalty. The penalty was imposed because although the Tarboxes were and continued to be engaged in the used car business when the Idaho Sales Tax Act came into effect on July 1, 1965, they did not obtain a seller's permit thereunder until June 30, 1974. The penalty also reflects the fact that Mr. Tarbox admitted preparing false invoices intended to reduce or eliminate the sales tax charged when vehi-

cles are titled. The Tarboxes protested the assessment and filed a petition for redetermination, which was granted, with the result that the amount of the deficiency was lowered. They were nevertheless still found to be owing $22,649 in tax, interest and penalty.

The Taxboxes appealed the redetermination decision to district court. Under Idaho Code § 63–3049(b), that court does not acquire jurisdiction over an appeal unless the taxpayer first pays the alleged deficiency, or files a surety bond in double the amount thereof. Mr. and Mrs. Tarbox did not have $22,649 in cash, nor were they able to qualify for a surety bond, so instead they filed a property bond in double the amount of the deficiency assessment, pledging their home and land, which they own free and clear. Due to failure of the Tarboxes to file the proper type of bond, the Tax Commission moved for summary judgment. The district court granted the motion and dismissed the complaint with prejudice.

On appeal to this Court the Tarboxes raise as error the failure of the district court to waive the bond requirement. They also contend that the surety bond requirement violates their constitutional rights to equal protection under the law, Idaho Const., art. I, § 2, U.S. Const., amend. XIV, and due process of law, Idaho Const., art. I, § 13, U.S. Const., amend. XIV. They do not take issue with the "pay first, litigate later" part of the statute. We hold that the decision of the district court was proper in all respects and accordingly affirm.

## I  WAIVER OF THE SURETY BOND REQUIREMENT

The Tarboxes rely on *Graves v. Cogswell*, 97 Idaho 716, 552 P.2d 224 (1976), as authority for their contention that the district court erred by not waiving the bond requirement altogether. Reliance on *Graves* is misplaced. That case involved an 84 year-old indigent woman who had been receiving public assistance benefits solely because of her indigency. Her bene-

fits were terminated and she was clearly without funds or other resources to pay the filing fee required for an appeal from the administrative agency decision. Had the requirement not been waived, Mrs. Graves would have been completely precluded from exercising her right to appeal. Focusing narrowly on the specific facts of the case, this Court held that, *in such cases*, the right to due process guaranteed under article 1, § 13 of the Idaho Constitution mandated that the filing fee be waived. *Id.*, at 717, 552 P.2d 224.

There is no factual similarity between the financial situation of the Tarboxes and the plight of Mrs. Graves in that there is no contention or showing that the Tarboxes are indigent or that they could not have obtained the bond money by procuring a loan on the equity in their home. Accordingly, the trial court did not abuse its discretion in refusing to waive the surety bond requirement.

## II  EQUAL PROTECTION

The first step in an equal protection analysis is to identify the classification which is being challenged. The "class" into which the Tarboxes fall for the purpose of this case is that class of litigants seeking to appeal an adverse decision of the Tax Commission. The classification is asserted to be unconstitutionally discriminatory because the bond, being a jurisdictional prerequisite to appeal pursuant to Idaho Code § 63–3049(b), is unique to tax cases.

The second step is to determine the standard under which the classification will be judicially reviewed. The established rule in Idaho is that the rational basis test is the appropriate standard of review of classifications made for tax purposes. *Sheppard v. State Department of Employment*, 103 Idaho 501, 504, 650 P.2d 643 (1982). Although the Tarboxes urge the strict scrutiny standard, that level of review would be inappropriate in this case as they do not fall into a "suspect class", nor does the statute in question infringe upon a funda-

mental right.[1] *See id.; Newlan v. State,* 96 Idaho 711, 713–714, 535 P.2d 1348 (1975). Nor is the intermediate standard of equal protection review, described as the "means-focus" test applicable in the instant case. This court has limited review under that standard to statutes of a blatantly discriminatory nature.[2]

The rational basis test "requires 'that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives.' " *Twin Falls Clinic & Hospital Building Corporation v. Hamill,* 103 Idaho 19, 24–5, 644 P.2d 341 (1982) (quoting *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)). In establishing the surety bond alternative under I.C. § 63–3049(b), the legislature opted for a commercially prudent course. To obtain a surety bond, relatively stringent financial standards must be met. The legislature thus enacted a statute rationally related to the governmental objective of ensuring the efficient collection of taxes. That this is a legitimate objective is beyond dispute. Taxes are the means by which government raises revenue for the health, education, safety and general welfare of its citizens. In the seminal case of *Cheatham v. Norvekl,* 92 U.S. (23 Wall.) 85, 89, 23 L.Ed. 561, 562 (1876), the United States Supreme Court upheld the validity of the "pay first, litigate later" rule on the ground that, "it is essential to the honor and orderly conduct of the government that its taxes should be promptly paid, and drawbacks speedily adjusted ...." It is likewise essential to the honor and orderly conduct of

government that when a bond is accepted in lieu of payment of the deficiency assessment itself, that it be of a nature so reliable that the government will be able to collect on it without delay and without competition from other creditors, in the event that taxpayer is found liable for the deficiency assessment.

The Tarboxes also challenge the double amount requirement on equal protection grounds. Aside from securing payment, the double amount requirement serves a second governmental objective, that of discouraging frivolous appeals, and therefore that classification is also clearly valid. Thus, the jurisdictional requirements of I.C. § 63–3049(b) present no violation of either the Idaho or United States Constitutions.[3]

## III  DUE PROCESS CHALLENGE

At the outset, we note that the Tarboxes do not truly challenge the nature or sufficiency of the procedural due process provided for in the relevant statutes; rather, they contend that the surety bond requirement effectively denies them access to the full range of procedural remedies. Thus to the extent that they may be without a further remedy, it stems from their inability or unwillingness to comply with the jurisdictional requirements of I.C. § 63–3049(b).

Although these jurisdictional provisions may seem harsh, it is an established rule that "the government has the right to prescribe the conditions on which it

---

1. "If a classification is suspect because it is based on matters such as race, national origin or alienage, or the statute infringes upon fundamental rights such as voting, procreation or rights regarding criminal procedure then strict judicial scrutiny is applied ...." *Newlan v. State,* 96 Idaho 711, 713, 535 P.2d 1348 (1975).

2. *See, Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), examining statute allowing full recovery in medical malpractice actions to those whose damages were below $150,000, but limiting full recovery in cases where damages exceeded $150,000; *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974), invalidation of Idaho automobile guest statute; *Messmer*

*v. Ker,* 96 Idaho 75, 524 P.2d 536 (1974), invalidation of airplane guest statute; *Harrigfeld v. District Court,* 95 Idaho 540, 511 P.2d 822 (1973), invalidation of statutory discrimination between males and females in designation of the age of majority.

3. As with due process, the differences between the standard applied under Idaho's equal protection clause and the federal clause are negligible; accordingly, we will not undertake a separate analysis of either issue under federal cases. *See Jones v. State Board of Medicine, supra,* 97 Idaho at 865, 555 P.2d 399.

will subject itself to the judgment of the courts in the collection of its revenues." *Cheatham v. United States, supra,* 92 U.S. at 89, 23 L.Ed. at 563. Implicit in this concept is the fact that appellate review is not a constitutional entitlement; rather it is a purely statutory right, the exercise of which is conditioned upon the manner prescribed by statute. Therefore, it is not required by due process.

It is significant that when *Cheatham* was written in 1876, the only means of gaining access to the courts for review of tax determinations was by pre-litigation payment of the tax. The hardship of that system was somewhat alleviated by creation of the Board of Tax Appeals, now the Tax Court, by Congress in 1924.[4] As discussed by the United States Supreme Court:

"The Board of Tax Appeals ... was created by Congress to provide taxpayers an opportunity to secure an independent review of the Commissioner of Internal Revenue's determination of additional income and estate taxes by the Board in advance of their paying the tax found by the Commissioner to be due. Before the act of 1924, the taxpayer could only contest the Commissioner's determination of the amount of the tax after its payment." *Old Colony Trust Co. v. Commissioner of Internal Revenue,* 279 U.S. 716, 721, 49 S.Ct. 499, 501, 73 L.Ed. 918 (1928).

In a different manner, the hardship of the pre-litigation payment system has also been partially alleviated in Idaho. I.C. § 63–3049(b) initially sets forth the standard requirement that the deficiency must first be paid in order for district court jurisdiction to obtain, but then goes on to create the alternative of providing a surety bond in double the amount of the alleged deficiency. Thus, the Idaho system is actually more lenient than that so strongly upheld in *Cheatham.*

Though the prerequisites to institution of an appeal are demanding, they are reasonable in light of the function served by taxes in our society. "[T]axes are the life-blood of government, and their prompt and certain availability an imperious need." *Bull v. United States,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935).

There being no constitutional due process infirmities presented by the statute in question, the Tarboxes' appeal on this issue as well as the foregoing issues is without merit.

No costs or attorney fees awarded.

DONALDSON, C.J., BAKES and BISTLINE, JJ., and TOWLES, J. Pro Tem., concur.

**4.** Section 900, Revenue Act of 1924, tit. 9, c. 234, 43 Stat. 253, 336 (26 U.S.C. § 1211, note, *et seq.*).